**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARK REINHART,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **NANCY A. BERRYHILL, Acting Commissioner of the U.S. Social Security Administration,**[1] <br><br> **Defendant.** | ) | **No. 14 C 7240** <br><br> **Magistrate Judge Maria Valdez** |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff Mark Reinhart's ("Plaintiff") claim for Disability Insurance Benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's Motion for Summary Judgment [Doc. No. 16] is granted and the Commissioner's cross-motion for Summary Judgment [Doc. No. 23] is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

## BACKGROUND

## I. PROCEDURAL HISTORY

On March 26, 2012, Plaintiff filed a claim for Disability Insurance Benefits, alleging disability since October 31, 2003. (R. 191-94.) The claim was denied initially and upon reconsideration, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (R. 89-102, 111-15, 124-27.) The hearing was held on April 17, 2013 before ALJ William Mackowiak. (R. 59-88.) Plaintiff personally appeared and testified at the hearing and was represented by counsel. (R. 59-88.) Vocational Expert Aimee Mowery also testified. (R. 82-88.)

On April 25, 2013, the ALJ denied Plaintiff's claim for Disability Insurance Benefits, finding him not disabled under the Social Security Act. (R. 23.) The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). (R. 1-6, 7-9.)

## II. FACTUAL BACKGROUND[2]

Plaintiff was born on May 14, 1962 and was 50 years old at the time of the ALJ hearing. (R. 61.) He has completed high school and a couple years of college. (*Id.*) He lives with his partner in Country Club Hills, IL. (R. 72, 244.) From 1983 to 2003 Plaintiff was employed as an office manager at a grocery store. (R. 66-68, 231.) Plaintiff stopped working in October of 2003 due to his back and leg pain and fatigue. (R. 68-69.)

[2] The following facts from the parties' briefs are undisputed unless otherwise noted.

### A. **Medical Evidence**

As a preliminary note, some Plaintiff's medical records consisted of records prior to his alleged onset date of October 31, 2003. Plaintiff was diagnosed with human immunodeficiency virus ("HIV") prior to the earliest treatment of record. (R. 793.) In 1992, Plaintiff presented to Dr. Behnam Zakhireh, M.D. at Ingalls Memorial Hospital to treat his HIV. (*Id.*) While under Dr. Zakhireh's care, Plaintiff received antiviral medication to help manage his HIV. (R. 793-94.) In the late 1990s, Plaintiff underwent two lumbar surgeries for a herniated disc. (R. 784, 1160.)

In September of 2003, Plaintiff presented to Dr. Howard Robinson, M.D. at Ingalls Memorial Hospital for low back pain that radiated through his right buttock into his thigh, calf, and foot. (R. 1160.) Dr. Robinson prescribed Plaintiff pain medication and epidural steroid injections. (R. 1161.) In November 2003, Plaintiff self-discontinued his antiviral treatment. (R. 793-94.)

In March of 2004, Plaintiff reported to Dr. Peter Iagmin, M.D. at Ingalls Memorial Hospital, with complaints of low back pain and right thigh, leg, and foot pain. (R. 1172.) During Plaintiff's stay, Dr. Lawrence Wilkin, M.D., Ph.D. performed an electromyography[3] ("EMG") which revealed lumbar radiculopathy.[4] (*Id.*) Before he was discharged, Plaintiff received pain medication. (R. 1171.)

In May of 2004, Plaintiff underwent a lumbar spinal surgery performed by Dr. Martin Luken III, M.D. at Ingalls Memorial Hospital to alleviate his chronic

[3] An electromyography is "an electrodiagnostic technique for recording the extracellular activity of skeletal muscles at rest, during voluntary contractions, and during electrical stimulation." *Dorland's Medical Dictionary* http://www.dorlands.com (last visited November 8, 2016) [hereinafter *Dorland's*].

[4] Radiculopathy, specifically lumbar radiculopathy, is "any disease of lumbar nerve roots, such as from disk herniation . . . with lower back pain and often paresthesias." *Dorland's*.

lower lumbar radiculopathy. (R. 786-88.) After surgery, Plaintiff reported improvement in his leg pain, but continued to experience low back pain. (R. 791.) He was given pain medications and shortly discharged. (R. 792.)

In general, Plaintiff's file does not contain medical records for the years 2005, 2006, and 2007.

In December of 2008, Plaintiff presented to Oak Forest Hospital and was diagnosed with pneumonia. (R. 390.) Then, in July of 2009, Plaintiff was admitted to Oak Forest Hospital for shingles accompanied with nausea and chest pain. (R. 392.) During that visit, Plaintiff reported that he had contracted shingles on two prior occasions. (*Id.*)

In March of 2011, Plaintiff reported anxiety and trouble sleeping to his doctors. (R. 672.) He was prescribed Valium. (R. 674.) In May of 2011, Plaintiff was admitted to Oak Forest Hospital and diagnosed with pneumonia. (R. 419.) A CAT scan taken during his stay showed a nodule in his right lung. (R. 423.) He was also treated for diarrhea. (R. 423.) In July 2011, Plaintiff presented to Advocate South Suburban Hospital again for diarrhea. (R. 321.) His doctors performed a partial colectomy.[5] (R. 324.) In October 2011, Plaintiff was scheduled for bronchoscopy[6] to remove the nodule found in his lung. (R. 588-90.)

In May of 2012, medical consultant Dr. Vidya Madala, M.D. reviewed Plaintiff's medical file and completed a Physical Residual Functioning Capacity ("RFC") Assessment of Plaintiff. (R. 90-92.) In making her determination, Dr.

---

[5] A partial colectomy is the "excision of a portion of the colon." *Dorland's*.

[6] A bronchoscopy is an "examination of the bronch[us] through a bronchoscope." The bronchus refers to "any of the larger air passages of the lungs." *Dorland's*.

Madala did not rely on the evidence from Ingalls Memorial Hospital which contains Plaintiffs medical records from 2003 and 2004. (R. 90-94, 965-1217.) Dr. Madala's report stated that there was insufficient evidence between Plaintiff's alleged onset date of October 31, 2003 and Plaintiff's date last insured of December 31, 2008, to evaluate Plaintiff's RFC. (R. 92-94.) Ultimately, she concluded that Plaintiff was not disabled on any date through December, 31, 2008. (R. 93.) Medical consultant David Gilliland, Psy.D. also performed a Mental Residual Functioning Capacity ("MFRC") Assessment of Plaintiff. (R. 92-94.) Dr. Gilliland concluded that Plaintiff's MRFC could not be established due to the lack of psychiatric records between 2003-2008. (R. 92.)

### B. Plaintiff's Testimony

On April 17, 2013, Plaintiff appeared for his scheduled hearing and testified before an ALJ. (R. 61-88.) Plaintiff testified that he had not worked since October 31, 2003. (R. 67-68.) Plaintiff had previously worked primarily as a cash office manager for a grocery store, but was trained to run all the departments within the store. (R. 67.) His responsibilities included managing receipts, balancing books, handling bank drops, and supervising 30 employees. (R. 67, 232.) Plaintiff testified his responsibilities required him to stand and walk throughout the work day and that he never sat during his shift. (R. 67.) Plaintiff initially worked 40-50 hours per week, but later reduced his schedule to 25 hours per week due to his back problems. (R. 67-68.) Plaintiff testified that in October 2003, at which point he was working part-time, he could no longer stand and needed to lie down during his shift. (R. 68-

69.) He was also having trouble concentrating on tasks such as counting cash and figuring numbers. (R. 75.) In October of 2003, Plaintiff and the grocery store management mutually decided to end his employment.[7] (R. 75-76.) Plaintiff collected unemployment for some time after he left his position. (R. 76.)

Plaintiff stated that prior to October 2003 he had undergone two back surgeries to relieve pain in his back and right leg. (R. 70.) Plaintiff continued to have back aches and sciatica[8] after these surgeries. (R. 80.) In 2003, his doctors prescribed physical therapy and medication to treat his residual pain, but Plaintiff did not like the side effects of his medications. (R. 69.) Then, Plaintiff's back "snapped" when he bent down to tie his shoe. (R. 80.) Consequently, in May 2004, Plaintiff visited a neurosurgeon who performed a spinal fusion. (R. 70.) Plaintiff testified the multiple surgeries helped alleviate his back pain but the sciatic pain in his right leg and right foot worsened following his spinal fusion. (*Id.*) He testified that since 2008, if he sits for more than fifteen minutes, his back aches and his sciatica gives him shocking pains. (R. 77.) He stated that he is unable to stand for longer than fifteen to twenty minutes due to leg and spine pain, and reported difficulty walking more than a few blocks. (*Id.*) Plaintiff testified that he continues to have back pain and neuropathy[9] causing tingling in his feet and fingertips. (R. 74.) To manage his ongoing pain, Plaintiff testified that he takes medicine which makes it hard for him to concentrate and causes him to feel fatigued. (R. 75.)

[7] Plaintiff's Work History Report is inconsistent with his testimony. Plaintiff self-reported he worked in the store from 1983-2005. (R. 68-69, 231).
[8] Sciatica is one type of lumbar radiculopathy. *Dorland's*.
[9] Neuropathy is a "functional disturbance or pathological change in the peripheral nervous system." Diabetes is a known cause or origin of neuropathy. *Dorland's*.

Plaintiff testified that he was diagnosed with HIV thirty years ago. (R. 71.) Plaintiff stated he experienced complications from HIV including fatigue, several rounds of shingles and pneumonia, and constant colds. (R. 71-72.) Plaintiff's fatigue started around 2000, at which time he was taking medication to treat his HIV diagnosis. (*Id.*) Plaintiff reported that when he takes HIV medication he is able to nap in the afternoon, but has trouble sleeping at night. (R. 72.) He stated that the medication also causes him nausea and diarrhea. (R. 71-72.) His diarrhea occurs up to ten times per day and lasts around ten to twenty minutes. (R. 73.) Plaintiff testified, however, that he did not take HIV medication between 2003 and 2008. (R. 71, 79.) Plaintiff stated that he stopped taking his medication because he no longer had insurance to help cover the cost. (R. 71.) In 2009, Plaintiff applied for Medicaid through Oak Forest Hospital and resumed taking HIV medication at that time. (R. 71-72, 78.) Plaintiff stated his HIV has worsened since 2008. (R. 78.)

Plaintiff also testified he has experienced depression and anxiety over the years. (R. 77.) After his spinal fusion surgery in May 2004, Plaintiff saw a psychiatrist. (R. 66.) Plaintiff attempted to obtain records of these visits, but the doctor's records did not go back that far. (R. 21, 66.) Plaintiff cited his anxiety and depression as the reason he did not seek new insurance before 2009, stating he "didn't care anymore." (R. 78.) Plaintiff testified that he was unable to read the newspaper because he had difficulty concentrating and it worsened his anxiety. (R. 76.) He also reported a general lack of interest and a sense of "impending doom." (R. 77-78.)

### C. Vocational Expert Testimony

The ALJ asked Vocational Expert ("VE") Aimee Mowery whether a hypothetical person with the same age, education, and work experience as Plaintiff, and a residual functional capacity ("RFC") limited to unskilled light exertional work and never climbing ladders, ropes or scaffolds, could perform any of Plaintiff's past work. (R. 84-85.) The VE responded that the hypothetical person could not perform any of Plaintiff's past work, but other jobs, including hand packager, sorter, and assembler would be available to such an individual. (R. 85.) However, when asked whether any jobs would remain available to Plaintiff if he required two to ten unscheduled breaks during the day for ten to twenty minutes at a time, the VE reported that no jobs would permit such breaks. (R. 87.) The VE further testified that no jobs would be available for an individual who was off task for greater than fourteen percent of the day. (R. 86-87.) The VE also stated that employers would not allow an individual to lie down or nap during the day or to miss more than one day of work per month. (R. 87.)

### D. ALJ Decision

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his onset date of October, 31, 2003. At step two, the ALJ concluded that Plaintiff had severe impairments of degenerative joint disease, status post laminectomy[10], failed back syndrome, radiculopathy, sciatica, HIV positive, diabetes mellitus, neuropathy, insomnia, depression, and anxiety. (R. 15.) The ALJ indicated at step three that Plaintiff did not have an impairment or

[10] Laminectomy is an "excision of the posterior arch of a vertebra." *Dorland's*.

combination of impairments that meet or medically equals the criteria of impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 16-17.) The ALJ then determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), limiting his activity to never to climbing ladders, ropes, or scaffolds. (R. 17-22.) The ALJ concluded at step four that Plaintiff could not perform his past relevant work. (R. 22.) At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act. (R. 23.)

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former

occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps 1–4. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the

ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *see Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence.").

## III. ANALYSIS

Plaintiff argues that the ALJ's made three errors: (1) the ALJ improperly assessed Plaintiff's RFC; (2) the ALJ improperly assessed Plaintiff's MRFC; and (3) the ALJ improperly assessed the Plaintiff's credibility. The Court finds the ALJ did not support Plaintiff's RFC claim with substantial evidence. Because this conclusion requires reversal, other alleged errors need not be addressed at this time.

### A. The ALJ Failed to Properly Support Plaintiff's RFC Analysis with Substantial Evidence

RFC is an administrative assessment of what work-related activities an individual can perform despite her limitations. 20 C.F.R. § 404.1545; SSR 96-8p; *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). In assessing the plaintiff's RFC, the ALJ must consider both the medical and nonmedical evidence in the record. *Id*. Additionally, the ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts. SSR 96-8p; *see also Briscoe*, 425 F.3d at 352.

Plaintiff argues that the ALJ failed to identify evidence that supported his conclusion that Plaintiff could perform unskilled light exertional work. (Pl.'s Br. at 8-9.) First, Plaintiff contends an evidentiary deficit was created because the record did not contain a medical opinion that addressed Plaintiff's RFC. (Pl.'s Br. at 9.) Specifically, Plaintiff asserts that the ALJ applied his own medical conclusions when assessing the Plaintiff's RFC because the single RFC assessment available to the ALJ concluded that the record contained insufficient evidence to evaluate

Plaintiff's claim. (Pl.'s Br. at 8-9.) Second, Plaintiff argues the ALJ failed to identify how Plaintiff's subjective claims warranted a finding that Plaintiff was capable of performing light exertional work or why he was limited in his ability to climb ladders, ropes, and scaffolds, but not ramps, stairs, or other postural activities. (Pl.'s Br. at 9-10.) Next, Plaintiff argues the ALJ's assessment of Plaintiff's RFC did not adequately address Plaintiff's fatigue, need to nap, and need to use the restroom. (Pl.'s Br. at 10-13.)

The Commissioner responds that the ALJ satisfied the discussions requirements pertaining to RFC because he analyzed the medical evidence, Plaintiff's testimony and credibility, and other evidence. (Def.'s Br. at 3.) Specifically, Commissioner contends that no treating source opined that Plaintiff was disabled or had a physical RFC that would prevent him from performing light exertional work. (Def.'s Br. at 4.) Moreover, Commissioner asserts the ALJ did consider Plaintiff's allegations of fatigue, the need to nap, and the need for restroom breaks, but that he failed to prove his symptoms resulted in any additional functional limitations before the date last insured. (Def.'s Br. at 5.)

This Court agrees with Plaintiff. The ALJ's assessment erred because the ALJ failed to identify evidence in the record that supported his conclusion that Plaintiff could perform unskilled light work.

Under the regulations, an ALJ's RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific

medical facts." SSR 96-8p at *7. If an ALJ fails to support his RFC conclusions the "omission itself is enough to warrant reversal." *Briscoe*, 425 F.3rd at 352.

The ALJ reviewed the available medical evidence and concluded that

> In sum, the above RFC is supported by the objective medical findings, nature and frequency of treatment, the [Plaintiff]'s activities, and other factors above. I have accommodated [Plaintiff]'s impartments by limiting him to at most light work with additional limitations consistent with RFC finding . . . on a regular and continuous basis . . . .

(R. 21-22.) In reaching this conclusion, the ALJ failed to build a logical bridge from the evidence to his conclusion.

Specifically, "while the ALJ need not 'rely entirely on a particular physician's opinion,' the ALJ may not play doctor and fill in evidentiary medical deficits." *Miocic v. Astrue*, 890 F. Supp. 2d 1046, 1057 (N.D. Ill. 2012) (citations omitted). Based upon the record, Dr. Vidya Madala, M.D., a trained medical professional, determined there was insufficient evidence to determine Plaintiff's RFC prior to his date last insured. (R. 92.) Notwithstanding Dr. Madala's opinion, the ALJ concluded that the record contained sufficient evidence to make his own RFC finding prior to Plaintiff's date last insured. (R. 21.) While Dr. Madala's opinion did not consider Plaintiff's 2003 and 2004 medical evidence, the record does not contain any other treating or opining sources or third party statements assessing Plaintiff's RFC. The ALJ gave weight to the observations of an agency representative who, *inter alia*, noted Plaintiff had no difficulties walking, standing, and concentrating at a face-to-face conference. (R. 21.) He also gave weight to his own observation that Plaintiff was able to testify at trial without any overt pain. (R. 21.) Although the ALJ is

allowed to incorporate his observations during the hearing into his assessment of the severity of a plaintiff's disability as it relates to his RFC, he is still required to provide evidentiary support for his findings. *Harris v. Astrue*, 646 F. Supp. 2d 979, 992 (N.D. Ill. 2009). The ALJ did not point to any medical evidence that could substantiate his finding that plaintiff could occasionally lift twenty pounds, sit for six hours, or never climb ladders, ropes, or scaffolds. Because there were no other medical determinations of Plaintiff's RFC in the record the ALJ was left with an evidentiary deficit that he impermissibly filled with his own medical conclusions.

Furthermore, the remainder of record does not support the ALJ's findings. In a Social Security Benefits case, the plaintiff "bears the burden of showing through testimony and medical evidence supported by clinical data and laboratory diagnosis that he was disabled during the period in which he was insured," *Bolinger v. Barnhart*, 446 F.Supp.2d 950, 954 (N.D. Ind. 2006); however, the ALJ is still required to ground his RFC findings in the evidence. *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003). Again, apart from Dr. Madala's finding the evidence was insufficient to make a RFC determination, the record does not contain any other opining sources or third party statements regarding Plaintiff's RFC. Furthermore, the record generally lacks medical records for 2005, 2006, and 2007 (i.e. three of the six applicable years). The ALJ claimed that the lack of medical evidence bolstered his finding because no source had opined that Plaintiff was disabled or had a physical RFC which proscribed work at a light level. (R. 21.) This argument fails because the ALJ is required to support his determinations with the evidence

available in the record and not with the lack of evidence from opining sources. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011), *Briscoe*, 425 F.3d at 352-53.

Moreover, while Plaintiff bears the burden of proof to demonstrate he is disabled, the ALJ also has a duty to fully and fairly develop the record. 20 C.F.R. § 404.1527(c)(3); *see Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004) (stating that an ALJ has a "duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable."). Plaintiff produced medical records for 2003, 2004, and 2008. If the ALJ found the available evidence was insufficient to make a determination, it was his "responsibility to recognize the need for additional medical evaluations." *Scott*, 647 F.3d at 741. The ALJ could have sent Plaintiff for an independent medical evaluation, requested a medical expert testify, or contacted Plaintiff's treating doctors for a medical opinion. *Miocic*, 890 F.Supp. 2d at 1056.

In conclusion, the evidence in the record simply does not support the ALJ's RFC determinations. The ALJ failed to sufficiently cite to, rely upon, or request any additional medical evidence that supported his determinations. Likewise, the ALJ did not discuss the medical evidence, treatment notes, or assessments. Rather, the ALJ impermissibly filled in evidentiary gaps with his own medical determinations of Plaintiff's RFC. Thus, upon remand, the ALJ should revisit his RFC determinations and provide a narrative description of how he reaches his RFC conclusions. Similarly, because this conclusion requires reversal on the basis that

the ALJ did not properly assess Plaintiff's RFC, the ALJ's other alleged errors regarding MRFC and credibility need not be addressed at this time.

## CONCLUSION

For the foregoing reasons, Plaintiff Reinhart's Motion for Summary Judgment [Doc. No. 16] is granted and the Commissioner's cross-motion for Summary Judgment [Doc. No. 23] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

**SO ORDERED.** **ENTERED:**

**DATE: March 6, 2017**

**HON. MARIA VALDEZ**
**United States Magistrate Judge**